## WITTICK vs. TRAUN.

[DETINUE UNDER CODE FOR SEVERAL SLAVES.]

1. *Distinction between detinue and trespass or trover in splitting single cause of action.* Trespass, trover, or detinue, at the election of the party injured, may sometimes be maintained for the same wrongful act to several specific chattels. If he elects to proceed in trespass or trover, he is bound to regard the act as indivisible, and cannot afterwards split it up into several causes of action; but, if he elects to bring detinue, he may maintain a separate action for the detention of each chattel.

2. *Sufficiency of verdict in detinue.*—In detinue for eight slaves, a trial being had on the plea of the general issue, the jury returned a verdict that "they find for the plaintiff, and assess the value of the slaves sued for as follows," &c., (specifying by name, and assessing the separate value of, all the slaves, except one, as to whom the verdict was entirely silent,) "and they also find the hire of said slaves to be $200": *Held*, that the verdict was not sufficient to authorize the rendition of judgment; while RICE, J., *dissenting*, held that it was a good finding for the plaintiff for the seven slaves named, with their hire as damages for their detention, and against the plaintiff as to the slave not named in the verdict.

3. *Plea which does not go as far as it professes bad on demurrer.*—A plea which professes to be an answer to the action as to five of the slaves sued for, while it constitutes a good defence only as to one of them, is fatally defective on demurrer.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THIS action was brought by Mary Wittick, the appellant, against Henry Traun, to recover ten slaves—to-wit, Rose, Will, Ann, Caroline, Jim, Lucy, Sarah, John, Eliza, and Martha, together with damages for their detention. The defendant pleaded, 1st, the general issue; 2dly, the statute of limitations of six years; and his other pleas were as follows :—

"3. *Actio non*, as to five of said slaves (to-wit, Jim, Lucy, Sarah, John, and Ann), because he says that, heretofore, on the 30th day of January, 1852, the plaintiff brought her action of detinue against this defendant, in this court, by writ in the words and figures following", &c. The plea then sets out the proceedings had in said former action, which may be thus stated: The negroes sued for were, Betsey and her seven

children—Dick, Jim, Lucy, Sarah, John, Ann, and Et, or Edward. The defendant pleaded, 1st, *non detinet;* and, 2dly, that the slaves came to his possession after the death of his intestate, as a part of his estate, and that he holds them as the property of said estate. On these pleas issues were joined, and a trial had at the Fall term, 1852, when the following judgment was rendered : " Came the parties," &c., " and thereupon came a jury", &c., " who upon their oaths do say, they find for the plaintiff, and assess the value of the slaves sued for as follows—to-wit, Betsey, at $750 ; Dick, at $600 ; Jim, at $500 ; Lucy, at $450 ; Sarah, at $375 ; John, at $250 ; and Et, or Edward, at $200 ; and they also find the hire of said slaves to be $200. It is therefore considered by the court, that the plaintiff recover of said defendant the said slaves, Betsey, Dick, Jim, Lucy, Sarah, John, and Et, or Edward, and the said sum of $200 for their hire as aforesaid ; and on failure of said defendant to deliver said slaves to the sheriff of Dallas county, when demanded by him, then to pay the value of said slaves as assessed", &c. The plea then avers that said judgment is still valid and subsisting, and has never been reversed, vacated, or annulled, and that the same has been fully paid and satisfied by him ; that the slaves sued for in that action are the same slaves sued for in this action ; that the plaintiff has not acquired any right or title to the said slaves, or any of them, since the commencement of that action, except the right acquired by the said verdict and judgment, but the title under which she now claims is the identical title which was in issue in that action ; and that at the commencement of that action, and long previously, he had possession of all said slaves.

" 4. For further plea, as to all the slaves sued for in this action (except those named in the last plea)—to-wit, Rose; Will, Caroline, Eliza, and Martha, defendant pleads a former adjudication and recovery, under and by virtue of the action of detinue mentioned in the last preceding plea, all the proceedings in relation to which, as set forth in the last preceding plea, are to be taken and referred to as a part of this plea, as if formally and particularly here again set forth. And defendant avers, that whatever claim or title the plaintiff had or has to the slaves named in this plea, each and all, she had-

at the time of the commencement of the said action herein referred to, and that she has not acquired any right or title to the said slaves since the commencement of that action ; that the title to said last-mentioned slaves is the same identical title through which the plaintiff claimed title to the slaves sued for in that action ; that the defendant, at the commencement of that suit, and ever since, has had possession of said last-mentioned slaves, and plaintiff has acquired no right or title to them since the commencement of that suit. And defendant further avers, that the verdict and judgment rendered in that action, as set forth in the last preceding plea, except that the same has been fully satisfied by defendant, are in full force, and have never been vacated, annulled, or set aside", &c.

The plaintiff took issue on the first and second pleas, and demurred to the third and fourth ; and her demurrer having been overruled, she filed the following replications :—

"To the third plea she replies, in short by consent, that she admits the recovery of said slaves mentioned in said plea, and particularly of the said slave Ann, by the proceeding set out in said plea ; and she avers, that said court, in addition to said proceeding, at its Spring term, 1853, rendered a judgment *nunc pro tunc* in said cause, as of the term in said plea referred to, which said judgment is in the words and figures following", &c. The judgment referred to, after stating the term of the court and the names of the parties, proceeds thus : "At this term of the court, comes the plaintiff, and moves to enter judgment *nunc pro tunc* in this case, instead of a judgment recovered at the last term of this court in this case, so as to embrace in the judgment and consideration of the court the slave Ann sued for in said case ; which motion being granted by the court, the following judgment *nunc pro tunc* is entered, as of the last term of this court." The judgment entry above copied is then set out, and concludes thus : "It is therefore considered by the court, that the plaintiff recover of said defendant the said slaves, Betsey, Dick, Jim, Lucy, Sarah, John, *Ann*, and Et, or Edward," &c. The replication then avers, " that said judgment *nunc pro tunc* has not been reversed, annulled, or in any wise set aside ; that by the said several proceedings referred to, said plaintiff's title to said

slave Ann became a good and legal one; that said slave Ann has been and remained in the possession of said defendant, and that he has refused to deliver her to plaintiff, or to pay plaintiff any sum of money for her, and that she was in defendant's possession at the commencement of this suit."

" To the fourth plea plaintiff replies, in short by consent, and says that she admits the recovery by plaintiff of all the slaves sued for in this action, except the slaves Rose, Will, Caroline, Eliza, and Martha; and as to these she says, that there has been no adjudication, and that the same, at the commencement of this suit, were in the possession of said defendant, and belonged to her as her property, and that defendant unlawfully detains them from her," &c.

The court sustained a demurrer to these replications, and the plaintiff refused to plead over. The rulings of the court on the demurrers to the third and fourth pleas, and to the replications thereto, are now assigned for error.

GEO. W. GAYLE, for the appellant, cited Wittick v. Traun, 25 Ala. 317; Farrington & Smith v. Payne, 15 Johns. 432; United States Digest, vol. 3, p. 174, §§ 1022, 1023, 1040, 1041; 4 Stew. & P. 357; 7 Ala. 807; 7 Port. 441; 1 Blackf. 12.

WM. M. BYRD, contra, cited the following cases : Oliver v. Holt, 11 Ala. 574; O'Neal v. Brown, 21 ib. 484; Phillips v. Berick, 16 John. 136; Farrington & Smith v. Payne, 15 ib. 432; Pinney v. Barnes, 17 Conn. 420; White v. Moseley, 8 Pick. 356; 19 Wend. 207.

RICE, J.—The detention of chattels is distinguishable from a trespass upon or a conversion of them. A detention may be included in a trespass or conversion; but there may be a detention, sufficient to support detinue, when there has been neither a trespass nor a conversion, and when, therefore, neither trover nor trespass could be maintained.—Herring v. Glisson, 2 Dev. Law R. 156; Six Carpenters' case, 8 Coke, 290; Walker v. Hampton, 8 Ala. R. 412; McCombie v. Davis, 6 East's R. 538.

When, by a single act, there has been a trespass upon or a conversion of chattels, which, at the time of such trespass or

conversion, or afterwards, are detained by the tort-feasor, the owner is not bound to treat such act as a trespass or conversion. He may do so, or he may elect not to do that, but to waive the trespass or conversion, and to treat the detention by the tort-feasor as lawful, temporarily, as to each or all of the chattels. If he elects to treat such single act as a trespass or conversion, and proceeds for it to judgment in an action of trover or trespass, then, by such election, and the very form of his proceeding, he is bound to regard such act as *indivisible*, and as giving him but one cause of action ; and he cannot afterwards split it up into several.—O'Neal v. Brown, 21 Ala. R. 482; Hite v. Long, 6 Rand. R. 457. If, however, he elects not to proceed for any trespass or conversion, but for the detention only, no such consequences ensue. Detinue proceeds on a principle different from that which, in the particular now under consideration, governs trover and trespass. In them, the cause of action is the single act which constitutes the trespass or conversion, and which, when proceeded for by the plaintiff as a trespass or conversion, is *indivisible, and cannot be split up;* but in detinue, the cause of action is the detention, which, when embracing separate chattels of the plaintiff, is, *at his election, divisible, and referrible to each chattel detained*.

When one detains at the same time several slaves, which belong to another under one instrument or title, the owner may elect to treat the detention of each as a distinct cause of action, and to bring a separate action of detinue for each. Although there is a strong resemblance between these causes of action, and they belong to the same family ; yet there is not an identity, but, in truth and in law, they are independent of each other. Each may be proceeded on separately, or all may be joined.—Snider v. Crog, 2 Johns. R. 229; State v. Morton, 18 Missouri R. 53.

The plain result of these views is, that the fourth plea is bad, and that the court below erred in overruling the demurrer to it.

It may be conceded, that a verdict, which finds *only part of the matter in issue*, is not good, and will not support a judgment. But it does not follow, that because a verdict *for the plaintiff* finds for *him* only *a part* of his demand, it is a find-

ing of only part of the matter in issue. Where the plaintiff's demand is divisible, there is no law which forbids the finding of a part for him, and the disallowance to him of the other part. It is believed to be the settled practice, that where a jury allow the plaintiff part of his demand only, and disallow the other part, they simply state in their verdict *the part they do find for him*, and are *silent as to the part they disallow*. If two slaves (Ben and Joe) were sued for in detinue, and on the general issue and evidence the jury should return their verdict as follows, " We, the jury, find for the plaintiff the slave Ben, and assess his value at five hundred dollars, and damages for his detention at fifty dollars", I do not suppose any one would contend, that this verdict found only part of the matter in issue. It says nothing as to Joe ; yet every one would at once admit, that its *silence* as to Joe was equivalent to an express finding for the defendant as to him ; and that it amounted to a finding of the whole matter in issue— finding Ben for the plaintiff in express words, and Joe for the defendant by significant silence. Whenever the words of a verdict *imply* the whole issue, it is sufficient.—Burper v. Baker, Croke's Eliz. 854.

I think the principle is incontrovertibly established, at the present day, that where a plaintiff sues for distinct causes of action, properly joined in his declaration, and the general issue is pleaded, and the jury allow him a specified number of his causes of action, and say nothing as to the others, the verdict is sufficient, and authorizes a judgment for him to the extent to which it finds for him ; and that such a verdict, and judgment thereon, will bar a second action for the causes of action not mentioned in express words in the verdict.—Brockway v. Kinney, 2 Johns. R. 210; Philips v. Berick, 16 *ib*. 136; Irwin v. Knox, 10 *ib*. 366; Markham v. Middleton, 2 Strange's R. 1259; 6 Com. Dig. tit. Pl. (S. 19), (S. 26); Lewis v. Lewis, Minor's R. 99; Wittick v. Traun, 25 Ala. R. 317.

Where the plaintiff brings detinue for several slaves, and the general issue is pleaded, it not only puts in issue the title and detention as to all, but as to each. The jury may lawfully find one or all for the plaintiff. If, under such a state of pleadings, they find only one expressly for the plaintiff, and say nothing as to the others, I think the verdict, by legal im-

plication, would mean precisely that they found for the plaintiff as to the one expressly mentioned, and for the defendant as to the others.

My opinion is, that where the plaintiff brings detinue for eight slaves mentioned in his declaration, (Ann being one of the number,) and the defendant pleads the general issue, and the jury say they "find for the plaintiff, and assess the value of the slaves sued for as follows—to-wit, Betsey, at seven hundred and fifty dollars ; Dick, at six hundred dollars; Jim, at five hundred dollars; Lucy, at four hundred and fifty dollars; Sarah, at three hundred and seventy-five dollars; John, at two hundred and fifty dollars; and Et, or Edward, at two hundred dollars; and they also find the hire of said slaves to be two hundred dollars";—it is a good finding for the plaintiff as to the seven slaves therein named, and their hire as damages for their detention, and a good finding against the plaintiff as to the slave (Ann) mentioned in the declaration and not mentioned in the verdict. The jury begin by saying, "they find for the plaintiff"; but they *instantly* proceed to show specifically what they do so find for the plaintiff,—that is, *seven* slaves separately named and valued in the verdict, and "the hire of said slaves" (to-wit, said seven slaves). The particular controls the general; the special matter limits and gives precision to the general words. Rich v. Lord, 18 Pick. R. 325; Lyman v. Clark, 9 Mass. R. 235; Jackson v. Stackhouse, 1 Cowen's R. 126; Chitty on Contracts, 85, and notes.

It was as much the duty of the jury to assess the value of each slave they found for the plaintiff, or to state expressly that the one whose value was not assessed was valueless, as to find for the plaintiff all the slaves she had proved herself entitled to recover. The finding of the jury, above set forth, carries on its face evidence that they knew such to be their duty. They doubtless valued each slave they found for the plaintiff. When they name only *seven*, and value only *seven*, and give hire for only *seven*, I cannot, either as a man or as a judge, say that, by the general words at the beginning of their verdict ("they find for the plaintiff"), they intended to find, or did find, *eight* slaves for the plaintiff. If they intended to find, or did find, Ann for the plaintiff, why did they not value

her, or give hire for her, or state that she was worthless? If they did not find, or intend to find, for the plaintiff, as to Ann, the verdict is unobjectionable; it follows the settled practice in this State in such cases, *in not mentioning her at all*, and in stating the names of those only as to whom they did find for the plaintiff. There is nothing decisive *as to the number* they found for the plaintiff, in the general words used in the commencement of the verdict; for, if they had found only one slave for the plaintiff, the verdict might well have *begun* with the same general words—to-wit, "they find for the plaintiff". It is entirely clear, that the finding as returned by the jury may be true, and yet the slave Ann not be found for the plaintiff. To the argument that Ann is found for the plaintiff, it may well be answered, that the other seven slaves sued for are clearly and undeniably found for the plaintiff; that if Ann is found for her, it is only by argument or inference; and that *the plaintiff* cannot take seven slaves by the express words of the verdict, and another by mere argument or inference.—Bemus v. Beekman, 3 Wend. R. 672; 6 Com. Dig. tit. Pl. (S.) 22; McCravey v. Remsen, 19 Ala. R. 435.

But, whilst I think the verdict does not find eight slaves for the plaintiff, I have no doubt but that it does find seven slaves for her—the seven named and valued in it. "The utmost favor has always been extended to verdicts, and they are *not construed strictly, as pleadings are.*" Whenever the court *can collect the clear meaning of the jury from the finding*, it is bound to work it into form and make it serve.—Moody v. Keener, 7 Porter's R. 218; Tippin v. Petty, 7 *ib.* 441; Hobart's R. 54; Hawks v. Crofton, 2 Burrows' R. 698; Miller v. Shackelford, 4 Dana's R. 271.

I also think, the proper judgment was rendered on the verdict, at the term at which it was rendered—a judgment, in the alternative, for the seven slaves named and valued in the verdict, and for the damages and costs. But as to the meaning of the verdict, and the correctness of the judgment rendered on it at the term when it was rendered, my brethren differ from me. Their views on these matters of difference are expressed in an opinion delivered by the Chief Justice at the present term, in another case between these same parties.

If the third plea had professed to answer the complaint,

*as to Ann only*, my opinion is, it would have been good; for its allegations are sufficient, if true, to constitute a defence as to Ann. But this plea professes to answer as to Ann and four other slaves. As to these four others, we all agree, it is defective, because it does not show, with reasonable certainty, that the former judgment was satisfied *by paying their assessed values*, nor negative the idea that there was an unlawful detention of them after the former judgment was rendered. The former judgment was in the alternative, and might have been satisfied either *by paying their assessed value*, or by *merely delivering them up*, and paying the damages and costs. If it was satisfied in the former mode, such satisfaction vested in the defendant all the title to them which the plaintiff had at the commencement of the former suit. If it was satisfied in the latter mode, such satisfaction would not vest any title in the defendant. As such different consequences result from *the mode* in which the satisfaction was made, the plea *as to the four* cannot be good without showing that the satisfaction was made in money or its equivalent. The third plea is bad, on the principle, that a plea which does not constitute a defence *to the extent to which it professes to go*, is defective in substance. Where it undertakes to answer as to five slaves, but is in truth an answer as to one only, it is bad *in toto*, on demurrer.—Deshler v. Hodges, 3 Ala. R. 509.

For the errors of the court below in overruling the demurrers to the third and fourth pleas, its judgment is reversed, and the cause remanded.